**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

| | |
|---|---|
| PAMELA LUTZ, | No. 87213-3-I |
| Respondent, | DIVISION ONE |
| v. | UNPUBLISHED OPINION |
| GRANGE INSURANCE ASSOCIATION, | |
| Petitioner, | |
| and | |
| ERIC DAVIS and DUKE HART, | |
| Defendants. | |

FELDMAN, J. — We accepted discretionary review of a partial summary judgment order interpreting and applying the Farm and Ranch Property Insurance Policy that Grange Insurance Association issued to Pamela Lutz (the Policy). Although the trial court correctly interpreted the Policy, it erred by deciding the amount payable to Lutz thereunder. Accordingly, we affirm in part, reverse in part, and remand for further proceedings.

I

The relevant facts are not in dispute. In June 2020, Lutz's septic system overflowed, causing sewage to back up into her home. Lutz filed an insurance claim with Grange, which accepted coverage for the loss, and Lutz relocated with her children to a hotel. Grange paid for the relocation pursuant to the "Your

Additional Living Expense" provisions of "Coverage D," the "Loss of Use" coverage included in the Policy.

At some point, Lutz moved back home, but she later moved again to temporary housing, and Grange resumed paying for Lutz's housing and certain other living expenses under Coverage D until August 24, 2021. Grange refused to make any further payments thereafter, even though Lutz had not moved back into her home, explaining that Lutz had exhausted her Coverage D policy limits of $59,400.

This lawsuit followed. Lutz moved for partial summary judgment, arguing that she was entitled to another 12 months of additional living expenses (ALE) coverage under a policy endorsement. The trial court agreed. It ordered "that [Lutz] is entitled to an additional 12 months of ALE benefits." It also ordered Grange "to pay [Lutz] an additional $59,400.00 representing an[ ] additional 12 months of ALE benefits" within 30 days of the court's order. Grange sought discretionary review of these orders. Division Three of this court granted review and transferred the case to this division of the court.

II

Grange argues that the trial court erred by interpreting the Policy to provide Lutz with an additional 12 months of ALE coverage after exhausting her Coverage D policy limits. We disagree.

We review orders on summary judgment de novo. *Werlinger v. Clarendon Nat'l Ins. Co.*, 129 Wn. App. 804, 808, 120 P.3d 593 (2005). Similarly, interpretation of an insurance contract is a matter of law, which we also review de

novo. *Hall v. State Farm Mut. Auto. Ins. Co.*, 133 Wn. App. 394, 399, 135 P.3d 941 (2006). "When we interpret an insurance policy, we consider the insurance policy as a whole, giving the policy 'a fair, reasonable, and sensible construction as would be given to the contract by the average person purchasing insurance.'" *Kut Suen Lui v. Essex Ins. Co.*, 185 Wn.2d 703, 710, 375 P.3d 596 (2016) (quoting *Key Tronic Corp. v. Aetna (CIGNA) Fire Underwriters Ins. Co.*, 124 Wn.2d 618, 627, 881 P.2d 201 (1994)).

The Policy states, in relevant part, that Grange will "insure up to the limit of insurance shown in the Declaration for Coverage D":

1. Your Additional Living Expense

   If a Covered Cause of Loss renders your principal living quarters uninhabitable, we will pay any necessary increase in living expense you incur so that your household can maintain its normal standard of living, provided that such uninhabitable quarters are located in:

   a. A dwelling covered under Coverage A; or

   b. A dwelling in which covered Household Personal Property is located if you are a tenant.

      Payment under this Coverage will be for the shortest time required for repair or replacement of the damaged property, or, if you relocate, the shortest time required for your household to settle elsewhere.

(Boldface omitted.) Additionally, the Policy came with a "FarmPak Plus" endorsement that provided as follows:

Increased Loss of Use Limit of Insurance

We will increase the Coverage D – Loss of Use limit of insurance shown on the declarations by an amount necessary to pay for your additional living expense or fair rental value for up to 12 months if the amount of loss or expense is more than the limit of insurance shown

on the declarations for Coverage D – Loss of Use.

(Boldface omitted.)   The limit of insurance shown for Coverage D in the declarations for the Policy was $59,400.

Both parties agree that the FarmPak Plus endorsement increases the Coverage D policy limits under certain circumstances.  However, they disagree about what those circumstances are.  Grange asserts that the endorsement increases the policy limits only if the insured incurs additional living expenses in excess of those limits "within a 12-month period."  Meanwhile Lutz asserts—and the trial court agreed—that the insured is entitled to an additional 12 months of Coverage D payments *after* the Coverage D policy limits are exhausted—which in Lutz's case was on August 24, 2021.

We agree with Lutz and, thus, with the trial court.  Standing alone, the Policy places no temporal limit on payments under Coverage D except that payments thereunder "will be for the shortest time required for repair or replacement of the damaged property, or, if you relocate, the shortest time required for your household to settle elsewhere."  The relevant section of the FarmPak Plus endorsement "modifies insurance provided under" Coverage D "if the amount of loss or expense is more than the limit of insurance . . . for Coverage D"—as Lutz alleges it was here.  When that is the case, the endorsement provides that Grange "will increase the Coverage D . . . limit of insurance . . . by an amount necessary to pay for [the insured's] additional living expense . . . for up to 12 months."  The average person purchasing insurance would reasonably interpret these provisions to mean that when the insured exhausts Coverage D's policy limits, Grange will *continue* to pay

living expenses that are otherwise subject to Coverage D for "up to 12 months," i.e., that the 12-month period begins when Coverage D policy limits are exhausted. Accordingly, the trial court correctly interpreted the Policy.

Grange disagrees and points to the following parenthetical in the policy declarations that appears after the line specifying the $59,400 policy limit for Coverage D: "(Fair Value up to 12 months per form F1046)." According to Grange, this notation "unambiguously provide[s] a Loss of Use limit of $59,400 for 'up to 12 months.'" But the parenthetical is not a complete sentence, it refers to "Fair Value" without defining the term, and it does not mention additional living expenses. Furthermore, Grange's interpretation of the notation leaves unanswered *when* the relevant 12-month period begins. Although Grange suggests that it begins on the date of the underlying loss, it points to no policy language to support that notion. For these reasons, the parenthetical does not support Grange's proposed interpretation of the Policy.

Grange additionally argues that under the trial court's interpretation, "insureds can intentionally delay remedying covered losses without recourse as their ALE benefits will continue beyond the confines of the Policy's stated duration." But other provisions in the Policy protect Grange against intentional delay by an insured. For example, under Coverage D, Grange will pay only "necessary" increases in living expenses and only "for the shortest time required for repair or replacement of the damaged property" or, if the insured relocates, "the shortest time required for [the insured's] household to settle elsewhere." The trial court's interpretation would not, as Grange asserts, lead to "an absurd result."

In short, the trial court did not err in concluding that the 12-month period referenced in the FarmPak Plus endorsement begins when Coverage D policy limits are exhausted.

III

Grange next asserts that the trial court erred by ordering it to pay Lutz an additional $59,400. We agree.

"Summary judgment motions are governed by 'a burden-shifting scheme.'" *Watkins v. ESA Mgmt., LLC*, 30 Wn. App. 2d 916, 923, 547 P.3d 271 (2024) (internal quotation marks omitted) (quoting *Welch v. Brand Insulations, Inc.*, 27 Wn. App. 2d 110, 114, 531 P.3d 265 (2023)). "'The moving party bears the initial burden to prove by uncontroverted facts that there is no genuine issue of material fact.'" *Id.* (internal quotation marks omitted) (quoting *Welch*, 27 Wn. App. 2d at 114). "If . . . the moving party does not satisfy its initial burden of proof, 'summary judgment should not be granted, regardless of whether the nonmoving party has submitted affidavits or other evidence in opposition to the motion.'" *Welch*, 27 Wn. App. 2d at 115 (quoting *Hash v. Children's Orthopedic Hosp. & Med. Ctr.*, 110 Wn.2d 912, 915, 757 P.2d 507 (1988)).

Lutz did not meet her burden as to the amount of additional living expenses, if any, payable to her. The sole issue she presented in her motion for partial summary judgment was one of policy interpretation. Although she argued that "Grange owes an additional 12 months of ALE" under Coverage D as modified by the FarmPak Plus endorsement, she did not present uncontroverted facts establishing the expenses she incurred in those 12 months—much less that they

constituted "necessary increase[s]," as required under Coverage D, or that they met any additional prerequisites to coverage under the Policy. And while she argues on appeal that "Grange already had the evidence of [her] monthly expenses at the very point that it cut off further benefits," it does not appear that this evidence was called to the trial court's attention. *Cf.* RAP 9.12 ("On review of an order granting or denying a motion for summary judgment the appellate court will consider only evidence and issues called to the attention of the trial court.").

While Lutz may ultimately be entitled to additional ALE benefits, the trial court erred by ruling as a matter of law, based on the record before it, that Grange owed Lutz an additional $59,400 under Coverage D.

IV

Lutz requests an award of fees on appeal, citing *Olympic Steamship Co., Inc. v. Centennial Insurance Co.*, 117 Wn.2d 37, 811 P.2d 673 (1991). Under *Olympic Steamship*, an insured is entitled to an award of attorney fees "in any legal action where the insurer compels the insured to assume the burden of legal action, to obtain the full benefit of [the] insurance contract." *Id.* at 53.

Lutz's request for fees on appeal is premature. As Grange points out, this matter is before us on interlocutory review, and Grange has asserted failure to cooperate and other affirmative defenses to coverage that have not yet been fully litigated. Because coverage remains at issue, the trial court is directed to determine, in consideration of the outcome of the proceedings below, whether— and to what extent—Lutz is entitled to fees on appeal. *Cf. Pub. Util. Dist. No. 1 of Klickitat County v. Int'l Ins. Co.*, 124 Wn.2d 789, 815, 881 P.2d 1020 (1994) (courts

will not award attorney fees "when an insured has undisputedly failed to comply with express coverage terms, and the noncompliance may extinguish the insurer's liability under the policy").

We affirm in part, reverse in part, and remand for further proceedings.

Feldman, J.

WE CONCUR: